GEORGE M. COOPER and SUZANNE H. COOPER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cooper v. Commissioner
Docket No. 5995-73.
United States Tax Court
T.C. Memo 1974-282; 1974 Tax Ct. Memo LEXIS 39; 33 T.C.M. (CCH) 1309; T.C.M. (RIA) 740282; October 31, 1974, Filed. Charles H. Dougherty and Ralph J. Gregg, for the petitioners. Louis J. Zeller, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $926.15 in petitioners' income tax for 1970. The sole issue for decision is what amount petitioners may deduct under section 162(a) [1] for partial use of their residence as a business office. The expenses in question were incurred for general maintenance and repairs, yard and grounds maintenance, utilities, cleaning, and insurance. *40 FINDINGS OF FACT Dr. George M. Cooper (hereinafter referred to as Dr. Cooper or petitioner) and Suzanne H. Cooper (hereinafter Mrs. Cooper), husband and wife, were legal residents of Hamburg, New York, at the time their petition was filed. Dr. Cooper was engaged in a family-type medical practice during the year in question. He maintained his office in his home which is located on the shore of Lake Erie in Wanakah, New York, approximately 12 miles southwest of Buffalo, New York. There were no other residential medical offices in that town or within a considerable distance. Wanakah is a residential area consisting of homes and cottages along the lake. It is located in the so-called snow belt of New York. During the winter months, snow often accumulates to a depth of several feet. Dr. Cooper established his practice in his present residence after leaving military service in 1946. The home is spacious (over 3,312 square feet), attractive, and well located for purposes of a family medical practice. Dr. and Mrs. Cooper lived there with their four children. *41 It is located on the corner of a State highway, which travels along the lake, and a small dead-end road. In order to accommodate the needs of his practice, Dr. Cooper widened the driveway to his home and converted it into an illuminated parking space. On an average day, four to six cars would be parked in this space, which had to be cleared regularly during the harsh winter months. Because of this patient traffic, it was also necessary to keep the yard attractive and safe. The patients entered through the front entrance of the home into a complex of rooms converted for office use. These rooms included a waiting room, two offices for professional use, and an examining room. The total square footage of the entire office area was approximately 756 feet. A reasonable estimation of the fair rental value of the office space in 1960 was about $3,000 per year. This area was used solely for business purposes. In 1970 Dr. Cooper had office hours from 1 p.m. to 5 p.m., 4 days a week. He made house calls whenever necessary and was on call 24 hours a day, 7 days a week. He spent his mornings making hospital and house calls and working with the Erie County Department of Social Services. *42 Mrs. Cooper assisted Dr. Cooper in his practice. She was his bookkeeper and receptionist and helped him, when needed, with patients. Mrs. Cooper was a trained X-ray technician, and she assisted Dr. Cooper in minor surgery when necessary. She paid all bills and accepted payments from patients. She also laundered all the office linens. As a result of Mrs. Cooper's role in her husband's practice, other parts of the house were utilized for business purposes. Since Mrs. Cooper was also a housewife and mother, telephones were placed throughout the house so that business calls could be answered. Much of the billing and bill-paying activities was done in the residential section of the home, primarily in the kitchen and breakfast room. In addition, all the office linens were laundered in the basement. The location of Dr. Cooper's office required that he keep quantities of serums, antibiotics, and vaccines in the house, and there was no room for a refrigerator in the office area. Therefore, some of these medicines were kept in a refrigerator in the kitchen, which was also used to store the family's food. On the second floor of the house, there was another refrigerator which also *43 held medicine. Dr. and Mrs. Cooper had a long association with many of their patients. Many were not restricted to the office area during their visits. Some would wait in the living room or kitchen and chat with Mrs. Cooper, rather than sit in the waiting room. Telephone calls might be made from the kitchen, for example, when a tow truck was necessary to move a patient's car which was stuck in the snow. At such times, patients might await the tow truck in the kitchen or living room with Mrs. Cooper. As a convenience, patients would often come by the house on their paydays and pay Mrs. Cooper in the kitchen or breakfast room rather than in the office. This was considered by petitioners to be a "comfortable" way of conducting business. On their 1970 return, petitioners deducted 50 percent, or approximately $4,668, [2] of the expenses incurred for general maintenance and repairs of the house, yard and grounds maintenance, utilities, cleaning, and insurance. Respondent determined that petitioners were entitled to a deduction of $1,807.47 for those expenses. *44 ULTIMATE FINDINGS OF FACT Thirty percent of the disputed amounts of petitioners' home expenses and 40 percent of their yard and grounds maintenance expenses are allocable to business use. OPINION Section 162 allows a taxpayer to deduct the ordinary and necessary expenses of conducting a business, and section 262 provides that, with exceptions not material to this case, "no deduction shall be allowed for personal, living, or family expenses." The expenses of maintaining a home are ordinarily personal and hence not deductible under section 262. But a home may be utilized partially for business purposes, and when a home is so used a taxpayer may deduct those expenses allocable to the business use. , on appeal (C.A. 9, Dec. 28, 1973); cf. . Petitioners contend that 50 percent of their home and grounds was employed in their business and that a corresponding percentage of the expenses incurred for upkeep of the home is deductible. Petitioners' allocation is premised upon the assumption that parts of their home, in addition to the formal office, were used *45 in the medical practice. The thrust of petitioners' argument is that the formalism associated with urban professional offices, which restricts the patients to an office area, does not apply in the use of their residential family-type medical office. Respondent seeks to limit the allocation fraction to 20 percent. Respondent's fraction is based upon the square footage occupied by the formal office section of petitioners' residence. The same percentage of yard maintenance costs was allowed by respondent.Respondent argues that any business use of other parts of the residence was merely incidental to their primary personal use and is not deductible. While petitioners' deduction was excessive, we hold that the allocation prescribed by respondent was unreasonably low in view of the nature of petitioner's practice. The evidence shows that Dr. Cooper utilized his formal office area solely for business purposes. That office area constituted roughly 20 percent of the square footage of petitioners' home. Petitioners are clearly entitled to deduct fully the expenses attributable to that space. The difficult issue arises from those rooms which served a dual purpose. Although petitioners *46 maintain that the entire first floor was used in Dr. Cooper's practice, the record shows that this was true only with respect to the kitchen, breakfast room, and basement. These rooms served a sufficient business purpose so as to justify a partial deduction for their use. As to the remainder of the house, we think its business use was nominal or only incidental to family living. Cf. .
Upon consideration of all the facts, petitioners are entitled to a 10-percent additional deduction for utilities, cleaning, and insurance, or 30 percent (or $854.40) in all. For general maintenance and repairs, petitioners are entitled to a total deduction of $1,443.78 (compared with the $1,025.47 allowed by respondent). The yard and grounds maintenance expenses merit brief separate treatment. Dr. Cooper's use of his home as his principal office necessitated a substantially greater expense for keeping his yard and grounds attractive and safe than would have been true of an ordinary residence. In addition, the heavy snowfalls during the winter and the harsh climate in the area added to the normal expense of maintaining his driveway and *47 parking space for his patients. However, since many of these expenses also conferred significant personal benefits by enhancing the beauty of his home, a 50-percent deduction is excessive. We find that 40 percent (or $424.80) would be a more appropriate figure.
Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue. ↩
2. The disputed deductions taken by petitioners as a business expense attributable to maintaining Dr. Cooper's office in their home and the amounts allowed by respondent in his notice of deficiency are as follows: Amount Claimed
Amount Allowed General maintenance and repairs
$2,713.00
$1,025.47
Maintenance of yard and grounds
531.00
212.40
Utilities
915.00
366.00
Cleaning
312.00
124.80
Insurance
197.00
78.80
$4,668.00
$1,807.47
Petitioners claimed 50 percent of their expenditures for the last four items listed above, and respondent allowed 20 percent of such items. Petitioners claimed a deduction of $2,713 for general maintenance and repairs and were allowed a deduction of $1,025.47. ↩